14-1668, Lauri Huffman v. Speedway, LLC. Oral argument, 15 minutes per side. Mr. Thomas for the appellant. Before we begin, I would note that we've got two separately docketed cases, but they're essentially the same case, so you don't have to be too careful to keep them separated. I think we know the facts across both of them, but we'll call them separately. Understood, Your Honor. Thank you. Good morning, Your Honors. May it please the court, my name is Will Thomas, and I represent the appellant, Ms. Lauri Huffman. And Your Honor, appellant has reserved two minutes. Your Honors, the parties, Ms. Huffman and the Applee Speedway LLC, come before the court on two cases this morning. The instant case concerns Ms. Huffman's claims for involuntary leave under the Family and Medical Leave Act, and her claim for pregnancy discrimination under Michigan's Elliott Larson Civil Rights Act. Ms. Huffman has asserted six issues on appeal. Specifically, she will be addressing three of those issues this morning. The first concerns matters surrounding her claim for involuntary leave under the Family and Medical Leave Act, and the latter two concern matters of indirect and direct evidence related to her Pregnancy Discrimination Act. If the court has no objection, Ms. Huffman would like to turn the court's attention to the first issue. Your Honors, the Family and Medical Leave Act is a comprehensive remedial statute that is designed with the purpose and intent of protecting employees from the interference by their employers with regard to the rights that are afforded to employees under the act. And as a broad remedial statute, the rights that are afforded underneath it must be broadly construed in favor of employees, and any exceptions or limitations corresponding to the act must be narrowly construed. And one of those exceptions or limitations is at issue in this case. In this court's 2007 opinion in Wysong versus Dow Chemical Company, the court affirmed the existence of an involuntary leave claim, a type of interference theory claim, under the Family and Medical Leave Act. That type of claim exists when an employer involuntarily forces an employee to take leave when they are not suffering from a serious health condition. In addition to affirming the existence of that claim, the Wysong court also created a ripeness exception to the existence of that claim. Under the Wysong ripeness limitation, an otherwise valid involuntary leave claim would not be ripe until the employee were to come back later within the same 12-month period, request FEMLA leave, and be denied their full 12 weeks of leave that they're entitled to under the act because of the prior unlawful act. Now, that didn't happen here, obviously. That did not happen here, Your Honor. The essence of Ms. Huffman's claim is an interference-based involuntary leave claim. Under 29 USC 2615A1, there are three prohibited practices regarding the interference theory, interference with rights, the restriction of rights, and the denial of rights. The Wysong court founded the ripeness limitation on an employee being denied their rights. And as a limitation on the rights afforded to under the act, it must be narrowly construed to that foundation. Because the Wysong court's discussion didn't encompass restrictions or interference, Ms. Huffman asserts that the ripeness limitation is reserved for only denial cases and that her interference-based case is not affected by the ripeness rule. When Ms. Huffman learned that she was pregnant, she informed her manager, Jennifer Francis, of this fact, putting Speedway on notice that she was pregnant and she was planning to deliver the following summer. Under the notice requirements for FEMLA, Ms. Huffman did not have to inform Speedway. How do you define interference and restriction in this context? It would seem that they would be lesser portions of denial. Denial is completely not allowing you any FMLA leave. Restriction would be lessened in it in some way. And interference, I guess, would be also lessened in it in some way. So why would not the Wysong, if the greater encompasses the lesser, how would you give a theory of why it wouldn't apply to the lesser restrictions? Your Honor, posed in that frame, yes, you would think that the denial would encompass the lesser. But as a limitation, we have to narrowly construe that to just those specific cases where rights are actually denied. Interference is not defined under the act. And Wysong was a denial case. Is that right? That's correct, Your Honor. So you say that the restriction should be narrowly construed, but their creation of the involuntary leave claim would seem to apply on its face only to denial. Ms. Huffman asserts that the involuntary leave claim can stand independent of denial cases, specifically to her interference case. When she put Speedway on notice that she would be delivering her child the following summer, Speedway had notice of her intent to take FMLA leave at that time. And when two or three months prior to that time occurred, they involuntarily forced her to take leave when she was not suffering from a serious health condition. They interfered with her right to take leave when she was actually suffering from a serious health condition with the birth of her child. That interference, as under Section 2615A, it's not the taking of rights that is given to employees. It's the attempt to invoke rights as well. I mean, I thought the plaintiff in Wysong had the same thing done. I forget if it was a man or a woman. But I thought we had that same pattern in Wysong. The employer saying you must take unpaid federal leave, the person saying I don't have a condition that would require me to do that. You ought to just accommodate me. Am I misunderstanding that case? You're not misunderstanding. That is correct. It was a woman, Your Honor. Thanks. It sounds, I mean, and that sounds like what we have here. In broad strokes, yes, Your Honor, it's the same fact pattern. But what was alleged in the complaint in Wysong and the theory that was carried to this court was the plaintiff was denied the full 12 weeks of leave as afforded under the act. Ms. Huffman is alleging that the interference with her ability to take leave at all was where the violation occurred, and that it is tied directly to the interference with the rights and not the denial of them. How did they interfere with her right to take leave at all? She could have applied and taken leave. In fact, that's what they wanted her to do. But regardless of whether that's what they wanted her to do or not, how does whatever they did interfere with her right to take leave or her ability to take leave? By forcing her, attempting to force her to take leave before she was ready to, they put her in the position of whether she can take her job or stand on her principles that I know I'm ready and willing and able to work. And I'm going to need all 12 weeks of leave when I give birth. But isn't that exactly what Wysong said? But again, the difference, Your Honor, would be the theory alleged, whether it be rooted in interference or rooted in denial. And because Wysong is tied strictly to the denial aspect and to interpret the Family Medical Leave Act consistent with its purpose and intent, the protections that are afforded to employees being broadly construed and limitations being narrowly construed, we can essentially parse Ms. Huffman's case from the Wysong case. Well, I mean, would that in a way be rewarding your client for not returning the FMLA paperwork at all? Respectfully, Your Honor, it would be interpreting the act consistent in protecting employees as with the purpose and intent, instead of empowering employers to be able to force employees to take leave whenever they believe that the employee is suffering from a serious health condition, whether or not that actually exists or not. Are you seeking to limit the applicability of Wysong or broaden the definition of the involuntary leave interference claim? We believe, Judge, that the involuntary leave claim as it stands right now is sufficient. We're seeking to limit the Wysong limitation to only denial-based cases. And because this is a remedial statute, we need to interpret it narrowly. And that would support your argument that the Wysong needs to be limited in application. Yes, Your Honor. And you might want to go on to pregnancy, if you want to. Absolutely. I'm just going to turn to the second issue regarding Ms. Huffman's pregnancy discrimination claim. Specifically, first, the issue surrounding the indirect evidence analysis under McDonnell Douglas. For Ms. Huffman's primary patient case, the only contested element of the primary patient case was the final element, the causal nexus element. Ms. Huffman asserted that she had satisfied that element based off of her testimony of a similarly situated person outside of the protected class who was treated differently than her. Ms. Huffman testified that three separate Speedway employees at the time that they were employees explained the situation of another employee who had a similar physical injury, which restricted that employee's ability to do certain physical tasks related to Ms. Huffman, the cleaning of baseboards, standing, getting on ladders, and such. But that employee was not forced to take leave, and Speedway accommodated that other employee's restrictions. But that other employee, Jenna Veazey, if I recall, she did not have restrictions as to moving heavy objects. Isn't that true? That's unclear as to whether or not there was restrictions on how much you could lift. No, that's a little unclear, but not from my knowledge that lifting was a problem. It was the kneeling and standing and climbing aspect. I mean, one useful thing about argument is just sort of nailing the facts down. Would you agree that a job requirement for your client's position was moving some of these kind of large inventory, I guess, items that weighed 40 or 50 pounds? That is one marginal function of her job, but her essential job functions were related to being a shift leader and being a manager, doing paperwork, overseeing other employees, but not strictly limited to lifting heavy objects. And my understanding also is that I think it's undisputed that sometimes she would be the only person present in the store. That was a possibility, yes. OK. All right. Well, if she can't do a bunch of stuff and nobody else is there, a bunch of stuff doesn't get done, they can't accommodate her. That is what Speedway's position is, Your Honor. Going back to sort of under the- If she's there alone and she can't do a bunch of stuff, a bunch of stuff's not going to get done, and therefore they can't accommodate her. They made one accommodation first, Your Honor. They transferred her to a shift where there would be more than a single employee there, but there were the possibilities. Not that they actually happened, but the possibility that she could be the only employee there, these what ifs. But in addition to these what ifs, she's the only employee, there are other instances where she could have someone before her on the previous shift help her with certain tasks. A corresponding shift could help her with certain physical tasks. So the fact that she may or may not be alone at times is not dispositive, necessarily, one way or the other. Did she make specific requests to say, I need for Bill to do this for me, or I need Mary to do this for me? She did not make any specific of those requests. At the time that she presented with her restrictions, she was immediately told not to work, and that she would have to be placed on leave until her restrictions were lifted, which would essentially be when she gave birth and thereafter. And was it claimed in the trial court that this was a disputed issue of fact as to whether or not they could accommodate her? That was one of the issues that wasn't actually addressed by the district court related to the involuntary leave claim, is whether or not she was actually suffering from a serious health condition or was unable to perform an essential job function. That was unanswered, but the Wysong court, the Hicks court, agreed that where the parties disagree as to whether or not the employee suffered from a serious health condition, that is a question of fact for trial. Quickly, to summarize the indirect evidence argument, Ms. Huffman testified about what three Speedway employees told her. That's all hearsay. Ms. Huffman asserts that it's actually non-hearsay as part of the admissions. Ms. Francis was one of the individuals who talked to Ms. Huffman about Ms. Genevieve, in which she had restrictions and that Speedway turned aside and didn't force her to take leave. But those employees don't speak for Speedway. They're not party admissions. Your Honor, I see that my time has expired. May I answer a question? In the Back versus Nestle USA case, Your Honor, the fact that none of these Speedway employees were tied to the actual decision making is inconsequential to whether or not that they were non-party admissions. So Ms. Huffman asserts that those were non-party admissions and the district court erred in ignoring that evidence. Thank you, Your Honor. Do you mean party admissions? Party admissions. OK, thanks. Thank you, Your Honor. We'll have your two minutes for rebuttal. Yes, thank you, Your Honor. Good morning, Your Honors. May it please the court, William G. Vinson appearing on behalf of the defendant Speedway, LLC. In this case, Speedway neither denied nor interfered with Ms. Huffman's rights to take FMLA leave. The undisputed facts establish that when she provided the medical restrictions that totaled 24, I believe, between the tasks she identified as not feeling comfortable performing for the remainder of the pregnancy, the tasks that Dr. Yee identified on the fitness or duty form that she was to avoid for the remainder of the pregnancy, and the tasks identified on the exceptional customer experience worksheet that she should also avoid for the remainder of her pregnancy, it was clear, although the district court never got to this question, it was clear, at least in my mind, and I think under the legal standard for summary judgment in the Sixth Circuit, that there was no genuine issue of material fact that she had a serious health condition related to her pregnancy that incapacitated her from that point forward. Well, a bunch of the stuff the doctors checked off was activities she maybe need to avoid. It was permissive, was it not? What the document says, I will agree, Your Honor, it appears to say may. But it says may. In the deposition testimony, these were tasks that she said she either could not perform or that she would decide if she could perform when she was at her job. This seems like a lousy way to treat a pregnant employee. Actually, it's not, Your Honor, and I think for purposes of this argument, whether one feels that a pregnant employee should be treated differently in these circumstances. They should be accommodated. There is no requirement under the FMLA, Your Honor, to accommodate a pregnant woman. In fact, under the ADA, it's not a disability that requires accommodation. But what's key to this case, and that we've argued repeatedly in our briefing, is that it is also undisputed that this policy was applied to both pregnant and non-pregnant employees. In fact, this same policy was applied to Ms. Huffman several years earlier when she had an ankle injury. That prevented her from returning to work because there were certain job functions that she could not perform, and Speedway could not accommodate those restrictions for the shift leader position. Where's that talked about in the record? Just send me in the right direction. It's, give me a moment, Your Honor. It's in our brief. Figured you knew that just off the top of your head. I always wish I could, Your Honor, but. It's in your brief, I'll find it. It is in the brief. We mentioned that. 1314. Thank you. And that just underscores that this policy is being applied equally to pregnant and non-pregnant employees. Now, I've read Wisong, and I agree with Judge Ketledge that the facts appear to be the same. And there isn't a parsing in that case of this notion that there's a interference claim based on denial. We've counseled, identified it as there's either a denial based or an interference based involuntary leave claim. Well, there's nothing in Wisong that says that. And what we have here is clearly an involuntary leave claim. In fact, those words are used in the plaintiff's complaint. That's what we litigated during the course of discovery, and that's what we litigated at the summary judgment stage. And Wisong makes it clear, and I believe it makes it so clear that the district court felt it did not have to rule on alternative grounds to grant summary judgment on the interference claim, that the claim only ripens when and if the employee seeks leave at a later date, and that leave's not available because the employee earlier was wrongfully forced to use the FMLA leave in the past. That didn't occur because Ms. Huffman dug in and said, I am not going to fill out the leave paperwork. It's kind of an odd rule, I mean, in a way, because let's say she didn't have a serious health condition. I mean, under Wisong, she's got to go ahead and take this leave, lose her income for that period, and then can't do anything about it until she tries to exceed what the federal statute allows. And maybe Speedway only makes her take a fraction of the time the statute allows, but she's lost that income. But she can't try to recoup it, even if she didn't have a serious medical condition, because her claim's not ripe. I guess that's the way it works. It is, but by the same token, if the FMLA is written such that an employee does not have to come to the employer and specifically request FMLA leave, if the employee comes to the employer with restrictions that establish, in the employer's mind, that there is a serious health condition that requires FMLA leave, then the onus is on the employer to initiate the leave process. Failure to do that is actionable under the FMLA. So be careful before you ask for any sort of accommodation at work, I guess, is the message there. I think it also is be careful what you advise your client in terms of what they can and cannot do at this point. But Wisong makes it clear, we don't, I would respectfully submit, have a record where there is a genuine issue as to whether or not this woman had a serious health condition, as defined under the FMLA. Why don't we talk about that? The FMLA, the regulation, says that to establish that with respect to an incapacity related to pregnancy, all the employer has to show is that there is an inability to perform one essential function of the job. Isn't that a question of fact? I don't believe so, Your Honor. The court's jurisprudence in this circuit and others has indicated under an ADA analysis that we will look to things like the job description. And in this case, there was a job description that is part of the record that indicated the number of, or the types of tasks that a shift leader would perform. There was also testimony from both the plaintiff and her supervisor and the district manager of these are the things that a shift leader has to be able to do. And the plaintiff herself admitted she couldn't do some of those. She could not do those things. Just seems harsh. Is this Wysong peculiar to the Sixth Circuit? It's not as I understand it. But I cannot cite another case at this time to the court from another circuit. But I would respectfully disagree that it's harsh. And I would disagree for this reason. It's a fundamental premise of the law that a wrong is only actionable if there is a resulting harm. As my torts teacher said in my first year of law school, negligence in the air is not actionable. You have to have a term. Which teacher was that? That was Jerome Petz at Detroit College. Father Jerome Petz. But counsel, let me put it this way. Isn't Judge Black's implication correct that being placed on leave without pay is a harm? So it may be unfair. But the question is, there's not a general law that says the company can't be unfair, right? I mean, if they just say to somebody, look, we don't like what's happening. You're on leave without pay for a week. And then you can come back. There's no action unless there's a statute that says so. I would agree, Your Honor. So there is some harm. But the question is, is it a harm that the statute addresses? As much as it may not be to my benefit to push back at all on this argument, because I agree with Your Honor. But I would still say that in an interference case, the harm is, remember, the question is, did this person ever seek FMLA leave at a time that they were entitled to it and they were denied because of a previous wrongful action of the employer? Until that point in time occurs, I don't believe that you have a harm. It's akin, in this instance, because Ms. Huffman refused to fill out the leave paperwork. Whether she agreed with Speedway or not that she had a serious health condition, she left herself exposed because she had no protection under any act. She was simply refusing. We were saying, we believe you need to be off the schedule because you can't perform the job. And she says, I disagree with that. And I'm not going to protect myself by filling out the leave paperwork for either an FMLA leave or for a personal leave. So why wasn't that difference in opinion as to the facts litigated rather than determined unilaterally by a judge? Because the issue was able to be resolved on the rightness issue. We fully briefed it in the lower court. And I would submit that if this panel is troubled by the district court's following of the Wysong opinion, you could affirm for a right result, wrong reason on that basis. On the record, that's before the court. I'm familiar with that approach. It's sometimes been called the last bastion of a scoundrel, but I did not say that. Let's not go overboard. But I'll move on to the pregnancy claim because I think it's very simple, at least from Speedway's perspective. This was a policy that was applied uniformly with respect to pregnant and non-pregnant employees, regardless of whether the restrictions emanated from a medical condition that was work-related or not. There's no evidence to the contrary. We followed our policy by asking her to fill out the leave paperwork. She refused to do that. We did not terminate her at that point. We sent her another letter and said, now that you've failed to timely fill out the leave paperwork, we're denying FMLA leave. But you may be entitled to a personal leave. Please send back the certification form so we can make that determination. And she refused to do that. And at that point, Human Resources terminated her for job abandonment, a legitimate non-discriminatory reason for the termination. As this court has said, the employer can terminate an employee for failing to follow established reasonable procedures with respect to the processing of FMLA requests. And that's what occurred here. What about the Elliott Larson claim and their argument that there is direct evidence of discrimination, I guess, because the form they sent her for the federal leave, I guess, in their view, mistakenly said that she had requested leave for the birth of a child when, in fact, she didn't want to be taking that leave? What's your answer as to why that is not direct evidence? First off, I think it's important to distinguish what the argument was with respect to direct evidence in the district court, whose opinion is on review here today, and what's being now asserted as direct evidence in the appellate brief. At the district court level, the only argument made with respect to direct evidence was that, first off, it's undisputed she did not point to any statements, comments, or remarks made by any Speedway employees that required the conclusion that pregnancy discrimination was at least a motivating factor in the decision to terminate. What Ms. Huffman argued was simply this. Speedway knew I was pregnant, and they forced me to take an unnecessary leave of absence because I was pregnant, which is simply a restatement of the involuntary leave claim. On appeal, we get into this argument that the direct evidence is that there were mistakes in the paperwork. And as the person who prepared that paperwork explained, she checked off the box that she did because she does that in cases where the leave is somehow associated to pregnancy. So the district court, in your view, was not told, hey, it's direct evidence of discrimination that this form misrepresented her desire to take leave. That's correct. It's also my position that even if the plaintiff had made that argument to the district court, it would not have raised a genuine issue of material fact because, as the person who prepared the form explained, well, for two reasons. First, my position would be, when you come to the employer with medical restrictions that establish, in my opinion, as a matter of law that you have a serious medical condition, you have requested leave under the FMLA. This goes back to the request either emanating from the employee or from my responsibility as an employer to offer that leave when I'm aware of facts that bring that to my attention. And secondly, the testimony of the person who prepared that form said, because Ms. Huffman was pregnant, I checked that box off. It could be that once we got the medical certification back, it would have been more appropriate for me to change that to the other box that was checked on the form. And I just don't believe that raises a genuine issue of material fact on the pretext issue or on the direct evidence issue. Thank you. Thank you. You'll have two minutes for rebuttal. Thank you, Your Honors. And two quick points with regard to Brother Counsel's comments. First, with regard to the serious health condition under the involuntary leave claim, Judge Black, you were correct that it is a question of fact. Both Wysong and Hicks described that if an employee and employer disagree as to whether there's a serious health condition, that's a question of fact. Not always, though. I mean, it's generally a question of fact unless no reasonable jury could find it one of those ways. And I think you have a problem here that it is part of the job description to move this heavy stuff. I mean, maybe they should have been nicer to her and tried to work around it, but it is part of the job description. She couldn't do it. That does equal incapacity. And I thought she conceded that in the district court. She conceded that the tasks that she could not do are part of her job. But the focus for whether or not there's a serious health condition and whether an employee is unable to perform an essential job function goes to what the ADA describes as an essential job function. The ADA? The Americans with Disabilities Act. That's what the FEMLA's regulations point to the Americans with Disabilities Act. This court's 2013 opinion in Hensel versus Clare County Road Commission, which is 737 F3D 1017, lays out how to determine what is an essential job function. That court said it's an incredibly fact-intensive inquiry, generally not suitable for summary judgment. But we affirm all day long on that stuff. So it just depends on what the record is. Yep, and getting to Your Honor's point about it being an essential job function, the Hensel court pointed to seven non-exhaustive factors. The job description being one of them. In Ms. Huffman's case, we do have the job description in the lower court record, and that's record 16-3, in which it lists out 19 tasks that we would concede are fundamental tasks. And none of them involve moving, lifting, or carrying anything. They're purely managerial tasks. So with due respect to Brother Counsel, there is a question of fact as to whether or not her restrictions were essential or fundamental job functions or marginal job functions. If they're marginal, then that would not support Speedway's position. Thank you, Your Honor. Thanks. That case will be submitted. The clerk may call the second case by the same names.